AF Approval _TLK for SCN_                              Chief Approval JP

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                        CASE NO. 8:24-cr-542-SDM-AEP

MAICOR ELIUD CEPEDA-GARCIA

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Gregory

W. Kehoe, United States Attorney for the Middle District of Florida, and the

defendant, Maicor Eliud Cepeda-Garcia, and the attorney for the defendant, Daniel

Fernandez, mutually agree as follows:

### A.    Particularized Terms

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Count One of the

Indictment.

Count One charges the defendant with conspiracy to traffic in firearms,

in violation of 18 U.S.C. § 933(a)(3).

2.    Minimum and Maximum Penalties

Counts One is punishable by a maximum sentence of fifteen years

imprisonment, a fine of $250,000, a term of supervised release of not more than three

years, and a special assessment of $100.

Defendant's Initials _MElb_

1

With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

3.    Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

First:      two or more persons in some way agreed to try to accomplish a shared and unlawful plan to traffic firearms;

Second:    the Defendant knew the unlawful purpose of the plan and willfully joined in it.

4.    Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Count Two and Three, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

Defendant's Initials _MHb_

2

### 6.    Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

### 7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement,

Defendant's Initials _UMb_

3

including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    8.    <u>Forfeiture of Assets</u>

    The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. §§ 924(d), 934(a)(1)(A), and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, all firearms, ammunition, and currency recovered throughout this case, including all firearms, ammunition and currency seized from the Ronda Ct. residence and its adjoining shed on or about November 19, 2024, which constitutes proceeds of the offenses to which the defendant is pleading guilty.

    The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural

Defendant's Initials _MHb_

4

challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8

Defendant's Initials _MWb_

will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct.

The defendant agrees that the United States is not limited to forfeiture of the property specifically identified for forfeiture in this Plea Agreement. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other

Defendant's Initials _MMb_

6

property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. The Defendant expressly consents to the forfeiture of any substitute assets sought by the Government. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including satisfaction of any preliminary order of forfeiture for proceeds.

Defendant's Initials _MMG_

7

### 9.   Abandonment of Property

The defendant voluntarily surrenders and relinquish all rights, title, and interest in, and all claims to all firearms, ammunition, and currency recovered throughout this case, including all firearms, ammunition and currency seized from the Ronda Ct. residence and its adjoining shed on or about November 19, 2024, in order that said property may be disposed of by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in accordance with law. The defendant understands that the above-described property may be subject to administrative or judicial forfeiture under Federal law, or may otherwise be disposed of in accordance with law, including destruction as abandoned property. I hereby expressly consent to such action by ATF without further notice.

In the event that ATF seeks to forfeit the above-described property, the defendant consents to such forfeiture, and expressly waives any right to receive any notice of the forfeiture proceeding. The defendant further waives any and all constitutional, statutory and procedural challenges, including any challenge to the timeliness of such forfeiture proceeding. Moreover, the defendant waives any right to challenge the forfeiture proceeding, and any right to request remission or mitigation of forfeiture or otherwise seek the return of the above-identified property in any proceeding, including any claim of innocent ownership and any claim or defense under the Eighth Amendment, including any claim that such forfeiture constitutes and Excessive Fine.

Defendant's Initials _MMb_

8

The defendant agrees unconditionally to forever release, acquit and discharge the United States of America, ATF, and any other federal, state and/or local law enforcement agencies, their officers, agents, servants and employees in their official and individual capacities, their heirs, successors and assignees from any and all actions, suits, proceedings, debts, dues, contracts, judgments, damages, claims, petitions, and/or demands whatsoever in law or equity which the defendant had, now has, or may have in the future in connection with the detention, seizure, forfeiture and/or disposition of the above-described property.

The defendant agrees unconditionally to forever hold and save the United States of America, ATF, and any other federal, state and/or local law enforcement agencies, their officers, agents, servants and employees in their official and individual capacities, their heirs, successors, and assignees harmless from any claims by any others, including costs and expenses, for or on account of any and all lawsuits or claims of any character whatsoever in connection with the detention, seizure, forfeiture and/or disposition of the above-described property.

10.    Cooperation—Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all

Defendant's Initials _LMMb_

9

relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials _____

10

11.    Use of Information—Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.    Cooperation—Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

Defendant's Initials _LHb_

11

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by decision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

Defendant's Initials _A MHb_

12

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

**B.    Standard Terms and Conditions**

1.      Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as

Defendant's Initials _LH6_

13

to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On the count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013.  To ensure that this obligation is satisfied, the Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100.00, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing.

The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials *llll*

14

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or

Defendant's Initials _LMMG_

15

indirectly, including those held by a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and

Defendant's Initials _MHG_

16

present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office.

Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

      7.    Defendant's Waiver of Right to Appeal the Sentence

      The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then

Defendant's Initials _MHb_

17

the defendant is released from his waiver and may appeal the sentence as authorized
by 18 U.S.C. § 3742(a).

### 8. Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the
United States Attorney for the Middle District of Florida and cannot bind other
federal, state, or local prosecuting authorities, although this office will bring
defendant's cooperation, if any, to the attention of other prosecuting officers or
others, if requested.

### 9. Filing of Agreement

This agreement shall be presented to the Court, in open court or in
camera, in whole or in part, upon a showing of good cause, and filed in this cause, at
the time of defendant's entry of a plea of guilty pursuant hereto.

### 10. Voluntariness

The defendant acknowledges that defendant is entering into this
agreement and is pleading guilty freely and voluntarily without reliance upon any
discussions between the attorney for the government and the defendant and
defendant's attorney and without promise of benefit of any kind (other than the
concessions contained herein), and without threats, force, intimidation, or coercion
of any kind. The defendant further acknowledges defendant's understanding of the
nature of the offense or offenses to which defendant is pleading guilty and the
elements thereof, including the penalties provided by law, and defendant's complete

Defendant's Initials _MMb_

18

satisfaction with the representation and advice received from defendant's undersigned counsel (if any).

The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are

Defendant's Initials _Mllh_

true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

From an unknown date but starting no later than 2023, through in or about December 2024, Cepeda-Garcia was part of a conspiracy which utilized "straw purchasers" to illegally obtain firearms from federal firearms licensees ("FFLs") within the Middle District of Florida and smuggle the firearms to the Dominican Republic, Puerto Rico and other places. Throughout this conspiracy, the defendant utilized a network of individuals, to purchase firearms on his behalf. Cepeda-Garcia and his co-conspirators would then distribute those firearms to other individuals, knowing that they would be transported outside of the United States. Between 2023 and 2024, Cepeda-Garcia trafficked over 250 firearms.

### A.    CC 2

On or about February 16, 2024, ATF Agents conducted an interview of CC2 who advised he has sold approximately 120 firearms in 2023 to CD 4. CC2 estimated that CD 4 paid him approximately $50,000.

In addition to CC2's statements, agents reviewed text message conversations between the CC2 and CD 4. Agents noted multiple messages showing the CC2 obtaining firearms on behalf of CD 4 and selling them to CD 4. These messages dated back into the summer of 2023, and occurred weekly, and sometimes daily. Agents believe—and the CC2 later confirmed— that these text messages

Defendant's Initials _UHG_

conversations are references to CD 4 contacting the CC2 in order to obtain firearms. In these messages, the CC2 tells CD 4 that there were Glock model-19 pistols and Glock model-47 pistols available for purchase. In one text message, CD 4 states that he was heading to the CC2, then sends a picture of a large sum of bulk cash, which CD 4 states is approximately $30,000.

CC2 advised CD 4 would pay CC2 directly with cash and also utilized forms of electronic payments. Agents calculated and CC2 confirmed that CD 4 paid CC2 approximately $50,000 for firearms purchases in 2023. Agents calculated the payments made by CD 4. In total, he paid CC2 approximately $10,600 in the five separate Zelle transactions in June 2023.

### C.   CC 3

CC3 coordinated the purchase of over 100 firearms from straw purchasers within the Middle District of Florida on CD 4's behalf in 2023 and 2024. Nearly all of these firearms were Glock pistols, and most of them were 9mm. These firearms were purchased at an FFL by a straw purchaser and unlicensed firearms dealer, operating at the direction of CC3. The firearms were purchased using funds provided by CD 4.

In connection with this investigation, on April 18, 2024, agents in Tampa and Orlando executed two separate federal search warrants at two residences in the Orlando area. During the first search warrant, approximately 10 firearms were recovered, as well thousands of rounds of ammunition, grenades, and a signal flare.

Defendant's Initials _Ullly_

21

The items in the residence belonged to individuals who had purchased them on CD 4's behalf, and for the benefit of the conspiracy.

### D.   CC4

The second search warrant was located in Kissimmee, FL, where CD 4's vehicle had been observed on multiple occasions in March 2024, and where agents believe CD 4 resided. Additionally, the vehicle was registered to that location, and the residence was purchased by CD 4's wife in 2023. During the execution of the search warrant at the Residence, agents recovered approximately 57 firearms, 30 empty gun boxes, approximately $16,000 in U.S. currency, ammunition, money counters, and other items of evidentiary value.

Additionally, Post-*Miranda*, CD 4 admitted that he is a part of an organization that traffics firearms to other countries, and that he has received, stored, and provided firearms to members of this conspiracy in the past. CD 4 admitted to knowing the firearms were being transported outside the United States and to helping to conceal their shipment in various packages prior to delivery. CD 4 obtained firearms himself directly, but also recruited and paid other individuals to purchase firearms on his behalf for the benefit of this organization. CD 4 identified Cepeda-Garcia as the organizer of this conspiracy, and the individual who he (CD 4) obtained firearms for. CD 4 stated that virtually all of the firearms he obtained from others, including CD 2 and 3, he obtained for Cepeda-Garcia and his coconspirator.

Defendant's Initials _UH/D_

### E.    Search Warrants and Arrest of the Defendants

On November 19, 2024, ATF agents executed three warrants in connection with this investigation. The first search warrant was for the residence located at Davenport. From that residence, agents recovered firearms packing materials, which resembled boxes utilized to conceal firearms and a firearm.

A third search warrant was for the residence belonging to the defendant, in Ronda Ct. Agents recovered two firearms from that residence. Agents also located receipts for a storage unit registered to defendant. The storage unit receipts had the same information as a storage receipt discovered in his co-conspirators' vehicle, indicating they were both utilizing the same storage unit.

Agents received consent from defendant to search the storage unit. Inside the storage unit, six firearms and packaging materials were located. The packaging materials were consistent with those intercepted by agents previously. On the same day, defendant was interviewed.

Based on ATF Trace Reports, agents identified at least eight firearms that CC2 purchased and later sold to CD 4, which were recovered in crime scenes in the Dominican Republic, firearms which CD 4 provided to members of this conspiracy. The firearms were transported to Miami, and then to Puerto Rico and outside of the United States disguised as lamps in large carboard boxes via parcels, typically through UPS shipments. At the time that Cepeda-Garcia and his co-conspirators

Defendant's Initials _MHB_

23

shipped the firearms, he did not have a license to sell or distribute firearms, and knew that his conduct constituted a felony, namely, dealing in firearms without a license.

The above is merely a brief summary of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all of the events, persons involved, or other information relating to this case.

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _MdB_

24

13.    Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that defendant

fully understands its terms.

DATED this ____3rd____ day of ____June____, 2025.

GEGORY W. KEHOE
United States Attorney

_____
Maicor Eliud Cepeda-Garcia
Defendant

_____
Diego Novaes
Assistant United States Attorney
Deputy Chief, Violent Crime and Racketeering

_____
Daniel Fernandez
Attorney for Defendant
Austin Crocker 1058018

_____
James C. Preston, Jr.
Assistant United States Attorney
Chief, Violent Crime and Racketeering

25